**G.H.C. REID & CO., INC., Plaintiff,**

**v.**

**K.M.S.T., K.M.S.T. WHOLESALE, and J.J. YONG, Defendants.**

---

**G.H.C. REID & CO., INC., Plaintiff,**

**v.**

**PETELO UTI and SO EUN JOO, individually and dba MALAEIMI VALLEY MARKET, Defendant-Garnishees.**

High Court of American Samoa
Trial Division

CA No. 78-89

July 1, 1997

Before KRUSE, Chief Justice, AFUOLA, Associate Judge, and ATIULAGI, Associate Judge.

Counsel: For Plaintiff, Jennifer L. Joneson
 For Defendants/Garnishees, Marshall Ashley
 For Defendant, J.J. Yong, Cherie Shelton Norman

## OPINION AND ORDER

### Introduction

On January 16, 1990, this court entered judgment against defendants K.M.S.T., K.M.S.T. Wholesale, and J.J. Yong ("Yong") (collectively, "Principal Defendants") in favor of plaintiff G.H.C. Reid & Co., Inc., ("Reid") in the sum of $48,804.11 plus court costs of $50 and interest calculated at 6% per annum. At that juncture, K.M.S.T. and K.M.S.T. Wholesale had ceased their operations and Yong provided labor for Fly, Inc., in exchange for non-cash forms of compensation. At no time since judgment was entered did any Principal Defendant attempt to satisfy any portion of the judgment.

After years of trying to recover on the judgment, Reid joined Petelo Uti ("Uti") and So Eun Joo ("Joo"), individually and dba Malaeimi Valley Mart ("MVM") as Garnishee/Defendants. Reid alleges that Yong, Uti, and Joo, Yong's wife since 1988, have formed a *de facto* partnership designed to prevent creditors from recovering on Yong's debts, and that Yong uses MVM as a front to hide assets from Reid. Defendants respond that only Uti and Joo created and maintain MVM, that MVM is a business entity completely separate from Yong, and that Uti and Joo are therefore not liable for Yong's personal debts.

### Discussion

 The High Court of American Samoa is guided by the tenets and principles of equity in all matters within the court's jurisdiction. *See, e.g., EW Truck and Equipment Co. v. Coulter*, 20 A.S.R.2d 88, 97 (App. Div. 1992); *Sesepasara v. Sesepasara*, 21 A.S.R.2d 71, 74 (Trial Div. 1992); *Kneubuhl Maritime Services Corp. v. Adams*, 8 A.S.R.2d 20, 23 (Trial Div. 1988); *Te'o v. Manuma*, 6 A.S.R.2d 135 (Trial Div. 1987). The concept of equity is founded on the basic precepts of "common

honesty, clear fairness and good conscience." *Aetna Cas. & Sur. Co. v. Jeppesen & Co.*, 440 F. Supp. 394, 404 (D. Nev. 1977) (citations omitted). In this court, fraud shall not prevail, substance shall not give way to form, and technical considerations will not prevent substantial justice from being done. *See, e.g., Pepper v. Litton*, 308 U.S. 295, 304-05 (1939). For example, in *Te`o v. Manuma*, this court set aside a conveyance of an asset because it was a thinly veiled attempt to defeat the rights of the transferor's creditors. *Te`o v. Manuma*, 6 A.S.R.2d at 138-40. In that case, the court held that the defendant possessed equitable title to a piece of real property even though the title to the land was technically placed in the name of the defendant's children. *Id.* at 138. The court stated that the entire transaction was "festooned" with the "badges of fraud," set aside the fraudulent conveyance, and permitted the plaintiff creditor to satisfy partially its judgment from the asset.[1] *Id.* at 138-40.

Therefore, in the present case, equity shall be our guide as we sort through the evidence regarding MVM's formation and operation. According to the testimony at trial, Joo alone is technically responsible for the loan from Yong's brother, and Joo, not Yong, is listed on MVM's partnership agreement filed with the American Samoa Government. Even though we have no direct evidence that Yong *actually* possessed the start-up financing, and no evidence that Yong has title to MVM, we find considerable evidence that Yong *constructively* possessed the money, created MVM with the loan proceeds, and possesses equitable title to MVM.

First, Joo stood before this court and claimed inability to testify because she could not understand either the English or Samoan language. We fail to understand how Yong's brother could possibly lend substantial sums of money[2] to his sister-in-law if she is unable to be proficient in one of the two languages of business in American Samoa.[3] Moreover, we cannot comprehend how Joo could possibly manage a store when nearly all of her customers and vendors speak only Samoan and English.

---

[1] The court held that the plaintiff creditor could satisfy its judgment only from half of the asset's value, because "[i]t is within our discretion . . . to mitigate what would otherwise be the harsh effects of an equitable remedy such as setting aside a fraudulent conveyance." *Id.* at 140.

[2] Yong claimed ignorance of the exact amount of the loan, but acknowledged that his brother provided at least $30,000 to start up the venture.

[3] We also note, with great suspicion, the fact that neither Joo nor Yong provided the court with the alleged written loan agreement between Joo and Yong's brother.

Second, as Yong admits, *he* approached his brother and actively participated in the discussions regarding MVM's genesis. Yong had a number of years of experience as an owner and manager of a grocery store, and Yong's business savvy in conjunction with his blood relationship with his brother, prompted the brother to make a considerable investment in MVM.

Third, the evidence simply does not support Yong's contention that his wife is independently operating her own business and that he is a simple-minded man who merely follows occasional orders. To the contrary, a number of witnesses testified at trial that they had personal experiences with Yong that indicated that Yong was not merely a dutiful, temporary servant, but rather a manager with considerable, consistent, and exclusive direction and control over MVM's operations. Without Yong's expertise, we are satisfied that there would be no MVM.

Uti's testimony suggests that his only role in this entire scheme was to avoid complications associated with business licensing procedures for non-residents under A.S.C.A. 27.0207--and occasionally to pick up some free groceries for his assistance in manipulating the system.[4] Uti, who is employed full time by the American Samoa Government, admits having next to nothing to do with the business operation of MVM. He testified that Yong has been a friend of his for many years and that his involvement with MVM was the procurement of the business license. Contrary to the information furnished in MVM's business license application, Uti acknowledged that he himself had made no monetary investment in MVM and that he has neither received income from his partnership interest nor has he filed partnership tax returns for MVM.[5]

Furthermore, Yong admits that he receives numerous non-cash fruits of the business: food, housing, and transportation in the "company" vehicle. Thus, while Uti and Joo's names are on the partnership agreement, the evidence indicates that Yong effectively owns, operates, and profits from MVM.

---

[4] Uti effectively admitted to deception with MVM's business license application, which he said required majority ownership by a Samoan, whereas Joo and Yong are Korean nationals. (He additionally admitted to a similar role with the setting up of Yong's brother's business, Fly, Inc.). That Uti has helped to obtain a business license through ruse is particularly disturbing in view of the fact that he is currently the Business License Inspector for the Development Planning Office in charge of enforcing the business licensing laws. This is a blatant conflict of interest.

[5] In point of fact, Yong admits to MVM's failure to file income tax returns from inception, but allows that the "accountant" is currently working on this omission.

Third, Reid has been consistently pursuing satisfaction of its judgment against Yong since judgment was entered in 1990. Simultaneously, Yong has involved himself in the operations of grocery stores, and carefully avoided cash remuneration for his services. When viewing the formation of MVM in light of the pending legal actions against Yong, one can only conclude that MVM is simply the latest in a series of mechanisms to deprive creditors of debt satisfaction.

■ Thus, we are persuaded by numerous "badges of fraud" in this entire arrangement, including: 1) Yong's indebtedness to Reid, 2) Yong's close family relationship with Joo, the technical part-owner of MVM, 3) Yong's retention of control over the business. operations of MVM, and the threat of litigation that loomed over Yong. *Cf. Te`o*, 6 A.S.R.2d at 138. MVM is a sham. As a matter of equity, we cannot remain idle and implicitly condone Yong's fraudulent attempt to hide assets from his creditors. To hold otherwise would encourage a proliferation of asset transfers from debtors to friends and family members, and seriously undermine the stability of the local economy.

■ Where the law is inadequate, this court may utilize its equitable powers to contrive new remedies. *Berdie v. Kurtz*, 88 F.2d 158, 159 (9th Cir. 1937). We therefore declare that Yong constructively possesses a 100% interest in MVM, and that MVM's assets are therefore subject to Reid's judgment lien. Judgment will enter accordingly.

It is so Ordered.